**In the United States District Court**
**for the Southern District of Texas**
**Houston Division**

| | |
|---|---|
| **United States of America** § | |
| § | |
| *versus* § | Criminal No. 4:25-CR-337 |
| § | |
| **Chad Harper** § | |

<u>**Defendant's Opposed Motion to Modify Conditions of Release**</u>

**To the Honorable Judge Keith Ellison:**

Comes now, Chad Harper, Defendant, by and through his attorneys of record, Brian Hobson and Wendell Odom, and hereby requests this honorable Court consider the merits of this motion and, in turn, grant this motion based upon the following:

**I**

On June 24, 2025, Harper was charged by indictment in twelve counts as follows:

- Count 1 – conspiracy to defraud the United States and Pay and Receive Health Care Kickbacks in violation of 18 U.S.C. § 371;

- Counts 2-4 – substantive counts for paying Health Care Kickbacks in Connection with a Federal Health Care Program in violation of 42 U.S.C. § 1320a-7b(b)(2);

- Count 6 – Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 1349;

- Count 7 – a substantive count for Bank Fraud in violation of 18 U.S.C. § 1344;

- Count 8 – Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956(h); and,

- Counts 9-13 – substantive counts of Engaging in Monetary Transactions in Property Derived from Specific Unlawful Activity in violation of 18 U.S.C. § 1957.

II

On June 25, 2025, Harper appeared before Magistrate Judge Peter Bray. Harper was released on bond pursuant to 18 U.S.C. § 3142(c) with the following relevant condition of release:

1. Can't Bill Medicare.

Dkt. 17 at 4 (section 8(w)).

During the initial appearance, Harper objected to the Medicare condition referenced above. Magistrate Judge Bray advised counsels to discuss potential solutions before filing a motion to challenge the condition. Based on Judge Bray's docket size, he did not have time to consider lengthy objections during the initial appearance. Defense counsel has engaged in negotiations with the government; offering various concessions to resolve this matter. The government has denied all proposals.

III

Under 18 U.S.C. § 3142(c), a judicial officer shall order the pretrial release of a defendant subject to the "least restrictive combination of conditions" that will reasonably assure the appearance of the defendant and the safety of any other person and the community.

The government requested that Harper's Medicare privileges be removed as a condition of release pursuant to § 3142(c). Presumably, this request was made to protect the Medicare Trust from false billings based on the allegations in the indictment.

**Government's Allegations under Anti-Kickback Scheme**

Harper owns and operates three successful diagnostic labs, Ohio River, Elite Clinical and Elite Bio [hereinafter "the labs"]. Harper's labs run and process samples for various providers across the country. Most of their business derives from infectious, genetic, and toxicology testing. The labs employ nearly 100 individuals, including four PHDs, four MDs, several master's level employees, data entry operators, directors, billing experts and IT support staff.

The government's indictment alleges Harper used marketers to procure business in violation of the federal anti-kickback statute. While health care companies are permitted to use marketing firms within their business model, there are complicated regulations surrounding proper payment structures. The government believes Harper violated those regulations, and the anti-kickback statute, by paying marketers a commission based on the volume of referrals. Under the government's theory, every claim produced by one of the targeted marketers was ineligible for Medicare reimbursement. There are no allegations that Harper doctored patient files, fabricated reports, or otherwise submitted false information to the government in support of Medicare payments. Rather, the government takes issue with the way Harper compensated specific marketers to procure business. It is the procurement of the business that underlies the government's allegations in Counts 1-4.

While substantial business was procured through the government's identified marketers, Harper's labs were not solely built on this business model. There are substantial claims, billed through Medicare or otherwise, that fall outside of the government's complaint entirely. Additionally, Harper is currently not engaged with any of the individual marketers at issue in the government's case. Harper does not currently pay any marketers or advertisers based on the volume or value of referrals. The issues underlying the government's indictment have been resolved.

There are no facts that suggest it is reasonable or necessary to exclude Harper from billing Medicare to protect the Medicare trust under this theory. The current condition only operates to undercut the financial health of the labs. There is no viable nexus between the claims currently being submitted and the harm the government seeks to avoid. This is an improper use of § 3142(c).

**Collateral Impact of the Removal of Harper's Medicare Privileges**

The patients using Harper's labs are nearly all insured through federal, state, or private insurance companies. A significant number of patients serviced by the labs are Medicare beneficiaries.

If the current condition stands, Harper's labs will slowly disintegrate over the coming weeks. Harper will be forced to lay off employees and he will be unable to process legitimate samples currently in the labs' possession. He will quickly have to shut the doors.

The impact of this condition on Harper's business is tangible and it will be swift. The Court should consider this impact when analyzing whether the current condition of release is the least restrictive condition to address the government's desire to protect the Medicare Trust.

**Harper has Made Multiple Attempts for an Agreed Amendment to the Condition**

Over the last four weeks, the defense has presented multiple proposals to resolve the issue in this motion. These proposals included removal of Medicare privileges for all genetic testing and carving out any provider that remained from the investigation years. The government has denied those requests. Harper now requests relief from the Court.

**Prayer for Relief**

Defendant is asking the Court to remove the condition barring Medicare billing, or in the alternative, consider a less restrictive condition that is tailored to the government's tangible concerns. Defendant prays this Court grants the motion, amends or strikes the condition barring Medicare billing, and for such further relief, general or special, at law or in equity, to which he may show himself justly entitled.

    **Respectfully submitted,**

    */s/ Brian Hobson*
    **BRIAN T. HOBSON**

        Texas Bar # 24086318
        Federal # 3030342
        440 Louisiana St., Suite 200
        Houston, TX  77002
        (713) 223-5575
        (713) 224-2815 [fax]
        brian@wendellodom.com
        **ATTORNEY FOR DEFENDANT**

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing Opposed Motion to Modify Conditions of Release was delivered via email to the Assistant United States Attorney in this cause on July 18, 2025.

        */s/ Brian Hobson*
        **BRIAN T. HOBSON**

## Certificate of Conference

Counsel has spoken to the DOJ Trial Attorney in this cause, Devon Helfmeyer, who is opposed to this motion.

        */s/ Brian Hobson*
        **BRIAN T. HOBSON**